**In re Anne F. MURRAY, Debtor.**

**Anne F. MURRAY, Plaintiff,**

v.

**Michael E. MARES, Temporary Receiver, et al., Defendants.**

**Bankruptcy No. 92–40518–T.**
**Adv. No. 92–4011–T.**

United States Bankruptcy Court,
E.D. Virginia,
Newport News Division.

Sept. 23, 1992.

S. Miles Dumville, Hazel & Thomas, P.C., Richmond, Va., for debtor.

Debera F. Conlon, Asst. U.S. Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This comes before the court upon the debtor's motion to enforce the automatic stay, for turnover, and for injunctive relief. Debtor's motion asks this court to determine that the automatic stay imposed by § 362 of the Bankruptcy Code applies to three categories of property in which she claims an interest:

(1) property held solely in debtor's name at the time her bankruptcy petition was filed;

(2) property held solely in the name of debtor's late husband at the time of his death; and

(3) property owned by certain corporate entities, the stock of which was owned by the debtor's late husband at the time of his death.

Debtor further requests that the court issue a preliminary injunction against any disposition of the above property by creditors or the temporary receiver charged with administering the debtor's late husband's estate. Additionally, the debtor seeks turnover of all property to the bankruptcy estate.

Hearings were held on the debtor's motion on March 31, 1992, and May 4, 1992. The court ruled from the bench that the automatic stay applied to category 1 property but that it did not apply to category 2 or 3 property. This memorandum opinion is written to supplement the court's previous bench rulings.

### Findings of Fact

The facts are largely undisputed. Debtor is the widow of David M. Murray, Sr., who died on February 7, 1992, from self-inflicted gunshot wounds. Mr. Murray was a lawyer and businessman who, prior to his death, resided in Newport News, Virginia. At the time of his death, Murray was under investigation by the Federal Bureau of Investigation and the Virginia State Bar for possible illegal financial dealings and ethical violations.

Murray owned certain parcels of real property as well as common stock in approximately 22 corporate entities. Many of these companies are defunct, and those which are active are real estate holding companies and not liquid. Some of Murray's assets were held jointly with the debtor as tenants by the entireties while others were held solely in his name. Murray's creditors are estimated to hold claims of approximately $28,000,000.00. However, Murray's assets are estimated only at $7,500,000.00. This fact, combined with the FBI and State Bar investigations, prompted various creditors of the estate to seek the appointment of a receiver to investigate the availability of assets and extent of claims against the estate. On February 18, 1992, the Circuit Court of the City of Newport News appointed Michael E. Mares, a defendant in this action, as the temporary special receiver.[1]

Mr. Murray had executed a will dated June 28, 1984, providing for marital and family trusts. On March 6, 1992, the debtor filed a renunciation of will in the Newport News Circuit Court and elected to take her statutory share of her deceased husband's estate rather than her distribution under the will.

On March 9, 1992, the debtor filed a voluntary chapter 11 bankruptcy petition. On that same day, the debtor also filed a complaint to enforce automatic stay, for turnover and for injunctive relief as well as the present motion for enforcement of stay, turnover and preliminary injunctive relief.

### Discussion and Conclusions

Preliminary injunctions in bankruptcy are governed by Bankruptcy Rule 7065

---

1. On May 26, 1992, J. Stephen Buis qualified as administrator of the estate of David M. Murray, Sr.

which makes applicable Federal Rule of Civil Procedure 65. In *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977) the Fourth Circuit established a four-part test for courts to apply in determining whether to grant preliminary injunctions. Briefly stated, the evidence must establish that (1) the movant/plaintiff will suffer irreparable harm if the injunction is not granted; (2) that such injury outweighs any harm that granting the injunction would inflict on the defendants; (3) that the movant/plaintiff is likely to prevail on the merits; and (4) that the public interest is not likely to be adversely affected by granting the injunction.

I base my denial of the debtor's motion as to category 2 and 3 property upon my determination that it is unlikely the debtor will prevail on the merits in her motion (and complaint) to effectively bring these assets into her estate.

Pursuant to § 362 of the Bankruptcy Code a petition in bankruptcy operates as a stay, applicable to all entities, of most actions against property of the bankruptcy estate. 11 U.S.C. § 362. The debtor takes the position that each of the three categories of property mentioned above constitute property of the bankruptcy estate to which the stay applies.

Property of the estate is defined in § 541 of the Code to include "all legal or equitable interests of the debtor in property as of the commencement of the case," as well as property "that the debtor acquires or becomes entitled to acquire within 180 days after [the petition date] ... by bequest, devise, or inheritance...." 11 U.S.C. § 541(a)(5)(A).[2]

Property titled solely in the name of the debtor at the time the petition was filed clearly falls within the § 541 definition of estate property. Indeed, none of the parties have objected to application of the automatic stay to category 1 property.

■ Category 3 property is held by corporations in which the late Mr. Murray owned common stock. In some cases Murray was the sole stockholder of a corporation, and the individual properties were the only corporate assets. Nevertheless, the debtor has no direct claim to this property. Any equitable interests the debtor may possess run not to the property itself but to the corporate stock held by her late husband.[3] Therefore, the debtor has no present interest in property owned by the various corporate entities. Accordingly, debtor's motion must be denied as to category 3 property.

■ The more difficult issue concerns the category 2 property, that which was owned solely by Murray at the time of his death and which makes up his probate estate. The debtor theorizes that Virginia's augmented estate statute vests her with an undivided one-third legal interest in all real estate and personal property held in her late husband's name at the time of his death. *See* Va.Code Ann. §§ 64.1–13 through 64.1–16.2 (Michie 1991).[4] Therefore, debtor asserts the automatic stay applies to the whole probate estate until such time as she is divested of her interest in specific property or relief from stay is granted.

The defendants argue that debtor's interest created by the Virginia statute amounts to no more than a claim against Murray's augmented estate that does not vest until

**2.** *See* footnote 6, *infra,* where the court addresses the debtor's argument concerning the breadth of this definition.

**3.** In the corporate form of organization the business is conducted by the corporation, which is legally separate from the stockholders who own it. 18A Am.Jur.2d *Corporations* § 157 (1985). Stated generally, the ownership of a share of stock carries with it certain incidents, primary among which are a right to share in the management of the corporation (right to vote), a right to share in *net* corporate earnings, and a right to a share of the *net* assets of the corpora-

tion *only* upon dissolution. 18A Am.Jur.2d *Corporations* § 741 (1985); Black's Law Dictionary 1269 (5th ed. 1979).

**4.** As of January 1, 1991, the common law interests of dower and curtesy were abolished in Virginia. Va.Code Ann. § 64.1–19.2. These interests have essentially been replaced by Virginia's "elective share/augmented estate" system. *See* J. William Gray, Jr., *Virginia's Augmented Estate System: An Overview,* 24 U.Rich.L.Rev. 513, 515–517 (1990).

such time as the augmented estate and the value of her interest are defined.

Section 64.1–16 of the Virginia Code states:

> If claim for an elective share is made, the surviving spouse shall, if the decedent left surviving children or their descendants, have one-third of the decedent's augmented estate; ...."

Va.Code Ann. § 64.1–16 (Michie 1991).

Augmented estate is defined in § 64.1–16.1 as "the estate, real and personal, after payment of allowances and exemptions ..., funeral expenses, charges of administration and *debts*...." Va.Code Ann. § 64.1–16.1 (Michie 1991) (emphasis added).

Although the augmented estate statute was recently adopted and little case law exists in Virginia interpreting the surviving spouse's rights, the statute plainly expresses the intent that those rights be subordinate to payment of estate debts. The debtor's interest, regardless of when it vests, is in the *value* of the augmented estate. By definition the augmented estate is comprised of residual assets that remain after estate debts are paid. The debtor's

interest is therefore itself residual in nature.[5]

■ Section 541 of the Bankruptcy Code requires that the debtor have an interest in property before it may be included in the bankruptcy estate.[6] The court must defer to state law to define the debtor's rights in property. *See e.g., Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In the present case the debtor's interest in the augmented estate, as a matter of logic, cannot be determined until the augmented estate itself is determined. *See* Va.Code Ann. § 64.1–16.1 (Michie 1991). As of the commencement of the debtor's bankruptcy case and continuing through hearing, the augmented estate of Mr. Murray remains undefined. Moreover, from evidence heard by the court it is extremely unlikely that the debtor's claim against the estate will have any value after estate debt is paid.

The court therefore finds that debtor has no interest in her deceased husband's estate which can be considered an asset of her bankruptcy estate and subject to the automatic stay.

---

**5.** *Cf. In re Olszewski,* 124 B.R. 743 (Bankr. S.D.Ohio 1991). The following discussion in *Olszewski* involved a debtor's interest in a partnership and provides a useful comparison to Mrs. Murray's interest in the augmented estate:

> Where the debtor is a member of a partnership, the debtor's interest in the partnership is included in the estate. However, assets held by the partnership itself are not included in the estate.... In part this is due to the fact that partners' rights in partnership property are not superior to the rights of partnership creditors. 'Until the creditors of the partnership are satisfied, each partner has no right to any distribution from the partnership.' As a result, assets of a partnership are not administered in the bankruptcy cases of the individual partners. (Citations omitted).

*In re Olszewski,* 124 B.R. at 746.

Similarly, Mrs. Murray's "interest" is in the value of the augmented estate once it is defined under the statute; by definition her "interest" in the augmented estate is subordinate to creditors of the decedent's estate.

**6.** The debtor cites *In re Anderson* for the proposition that § 541 broadly defines "property" of the bankruptcy estate. However, *In re Anderson* also stands for the proposition that state law ultimately determines whether a debt-

or has a property right or interest in specific property. *In re Anderson,* 128 B.R. 850, 853 (D.R.I.1991).

*In re Anderson* involved a debtor who was attempting to exempt from her estate certain "interests" she had in her mother's will. 128 B.R. at 852. The court looked to wills law in determining the debtor's rights, and found that under the will the debtor was "*guaranteed* to receive ... either a ⅕ share in ... $75,000 or a ⅙ share in the sale proceeds of [her mother's] house." 128 B.R. at 852 (emphasis added). The court concluded the debtor's attempt to exclude this interest was frivolous and warranted Rule 11 sanctions. 128 B.R. at 854–57.

*In re Anderson* is distinguishable from the instant case in two critical respects. First, in this case the debtor has renounced her interest under the will; therefore, the applicable state law is not the law of wills but rather Virginia's augmented estate statute. Under the statute the debtor's one-third interest cannot be established until the augmented estate itself is defined. Second, since the statute nets out debts from the definition of the augmented estate, there is no "guarantee" of the value of the augmented estate. In fact, considering the estate's estimated four-to-one debts-to-assets ratio it is possible that Murray's augmented estate has no positive value.

█ Finally, even if the court were to find that category 2 property constituted property of the bankruptcy estate, cause exists in the present case under 11 U.S.C. § 362(d)(1) to grant relief from stay for the purpose of allowing further administration of Mr. Murray's estate. This court is most reluctant to become involved in state law probate matters absent compelling justification. The decedent Murray was a holder of numerous properties of relatively limited value in relation to the substantial claims of creditors. To invoke the stay here would unnecessarily bog down the probate of his estate, if not create chaos in the probate system. Additionally, it would seem to serve no good purpose in the administration of the debtor's chapter 11 case.

Accordingly, to the extent that property of the late Mr. Murray's estate may constitute property of the debtor's bankruptcy estate, the court finds cause exists to grant relief from stay for the purpose of allowing the temporary special receiver and any subsequent administrator of the estate to proceed according to Virginia law with the payment of estate debts and expenses. Individual creditors of Mr. Murray's estate need not bring separate and individual motions for relief.

A separate order will be entered.