**STEELCASE INC., Polyvision Corporation, and Greensteel, Inc., Plaintiffs,**

v.

**SMART TECHNOLOGIES INC. and Smart Technologies Corporation, Defendants.**

**No. 1:03–CV–476.**

United States District Court, W.D. Michigan, Southern Division.

March 5, 2004.

Francis DiGiovanni, George Pazuniak, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, for PolyVision Corp.

Scott M. Gettleson, Timothy J. Vezeau, Katten Muchin Zavis Rosenman, Chicago, IL, Kevin J. O'Dowd, Dickinson Wright, PLLC, Grand Rapids, MI, for Smart Technologies Corp. and Smart Technologies, Inc.

Richard A. Glaser, Dickinson Wright, PLLC, Grand Rapids, MI, for Smart Technologies, Inc.

Craig H. Lubben, Miller, Johnson, Snell & Cumminskey, PLC, Kalamazoo, MI, Jon G. March, Miller, Johnson, Snell & Cumminskey, PLC, Grand Rapids, MI, for Greensteel, Inc.

### OPINION

QUIST, District Judge.

#### Background

Plaintiffs, Steelcase Inc. ("Steelcase"), PolyVision Corporation ("PolyVision"), and Greensteel, Inc. ("Greensteel"), filed their complaint against Defendant, Smart Technologies, Inc. ("STI"), on July 15, 2003, alleging that STI is willfully infringing United States Patent No. 5,838,309 (the "'309 patent"), and that Plaintiffs are not infringing United States Patent Nos. 5,448,263 (the "'263 patent") and 6,141,000 (the "'000 patent"), owned by STI. Count I alleged a claim for patent infringement, Count II requested a declaratory judgment that Plaintiffs are not infringing the '263 and '000 patents, and Count III requested a declaratory judgment that the '263 and '000 patents are invalid. On September 11, 2003, Plaintiffs filed a first

amended verified complaint, which added another defendant, Smart Technologies Corporation ("STC"), a subsidiary of STI, and added further allegations supportive of Plaintiffs' claim of an actual controversy for purposes of the declaratory judgment counts. On December 17, 2003, the Court issued an opinion and order granting STI's motion to dismiss in part and dismissing without prejudice the declaratory judgment claims regarding the '263 and '000 patents (Counts II and III). Thus, the only remaining claim is the claim for infringement of the '309 patent (Count I).

Now before the Court is STI's and STC's joint consolidated motion to drop misjoined parties, to dismiss, and to transfer, filed on November 25, 2003. Because the Court has already dismissed the declaratory judgment claims, the only issues presented by the instant motion are: (1) whether Steelcase and PolyVision are proper parties with respect to the only remaining claim, for infringement of the '309 patent; and (2) whether the case should be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a).

### Discussion

### I. Motion to Drop Misjoined Parties

Defendants contend that the Court should dismiss Steelcase and PolyVision from this case because they have no rights in the '309 patent. Defendants point out that in their First Amended Verified Complaint, Plaintiffs admit that only Greensteel owns the '309 patent. (1st Am. Verified Compl. ¶ 12.) Therefore, Defendants contend, Steelcase and PolyVision lack standing and are not proper parties to this action.

Plaintiffs respond that Defendants' motion must be denied because PolyVision and Steelcase are both proper parties to

this action. According to Plaintiffs: (1) PolyVision acquired Greensteel in a reverse merger in 1994, (Dunn Decl. ¶ 1, Pl.'s Mem. Ex. B); (2) in May 2000, Greensteel acquired all of the right, title and interest in the '309 patent from Micro-Touch Systems, Inc., (1st Am. Verified Compl. ¶ 12); (3) prior to January 2, 2004, Greensteel was a wholly-owned subsidiary of PolyVision and served as the holding company for PolyVision's operational assets, including the '309 patent, (Dunn Decl. ¶ 6); (4) prior to January 2, 2004, Greensteel permitted PolyVision to solely and exclusively practice Greensteel's rights under the '309 patent in the United States and Greensteel granted PolyVision the right to bring actions to enforce the patent against third parties, (*Id.* ¶¶ 10, 11; 1st Am. Verified Compl. ¶ 13); (5) on January 2, 2004, Greensteel was merged into PolyVision, and all of Greensteel's assets, including the '309 patent, became PolyVision's assets, (Brondyk Decl. ¶ 3, Pls.' Mem. Ex. C); and (6) Steelcase is the parent company of PolyVision.[1] Plaintiffs state that the merger was completed for corporate purposes unrelated to this suit and that preparations for the merger were made several months prior to the merger and independently of this lawsuit. (*Id.* ¶ 4.)

Plaintiffs contend that PolyVision is an indispensable party because it now owns the '309 patent. In addition, Plaintiffs assert that PolyVision was a proper party from the outset because prior to January 2, 2004, Greensteel permitted PolyVision to solely and exclusively practice all of the rights under the patent, including the right to enforce the patent against third parties, giving PolyVision sufficient rights in the patent to have standing as a plaintiff.

---

1. In its prior opinion the Court incorrectly stated that PolyVision was the owner of the '309 patent, apparently based upon the exchange of correspondence between the parties.

Plaintiffs also contend that Steelcase is properly joined as a party because it is PolyVision's parent corporation and has an equitable interest in the enforcement of its wholly-owned subsidiary's patent rights.

■■■ The Patent Act provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. Generally, a plaintiff in a patent infringement action must hold legal title to the patent at the time of the infringement. *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed.Cir.1995). In some circumstances, however, a licensee with substantial rights in the patent may have standing to sue as a plaintiff or co-plaintiff for infringement. *Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1377 (Fed.Cir. 2000); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed.Cir. 1995). To have "standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone." *Ortho*, 52 F.3d at 1031. "The proprietary rights granted by any patent are the rights to exclude others from making, using or selling the invention in the United States." *Id.* at 1031–32. A nonexclusive or "bare" license is insufficient to confer standing because such a license amounts to no more than the patent owner's promise not to sue the licensee for making, using, or selling the patented invention; thus, a nonexclusive licensee suffers no legal injury from infringement. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed.Cir.2001). On the other hand, an exclusive license, which allows the licensee to prevent others from making, using or selling the patented technology, is sufficient to confer standing. *Ortho*, 52 F.3d at 1032.

■■■ The facts set forth in Plaintiffs' exhibits are sufficient to establish that at the time this suit was filed, PolyVision possessed sufficient rights in the '309 patent to confer standing on PolyVision to prosecute a suit on the '309 patent. Specifically, Greensteel, the owner of the patent, was a wholly-owned subsidiary of PolyVision. Although there apparently was no written license agreement, PolyVision was the sole licensee of the patent, Greensteel permitted PolyVision to exclusively practice the patent, and Greensteel granted PolyVision the right to enforce the patent. Moreover, there is no evidence to suggest that since its acquisition of the '309 patent Greensteel has ever granted rights in the patent to any party other than PolyVision. The facts in the instant case are analogous to those in *Mi–Jack Products, Inc. v. The Taylor Group, Inc.*, No. 96 C 7850, 1997 WL 441796 (N.D.Ill. July 30, 1997), where the court found standing based upon the "very extremely close" relationship between the patentee and the sole licensee. *Id.* at *8. In that case, the wholly-owned subsidiary obtained the patent and assigned it to the parent. The parent then licensed the patent back to the subsidiary. The court noted that the subsidiary-sole licensee was essentially the exclusive licensee because the parent and subsidiary were "one and the same." *Id.* The facts in this case provide an even stronger basis for concluding that the licensee has standing because Greensteel, the patentee, was the wholly-owned subsidiary of the licensee, PolyVision. Thus, PolyVision effectively had exclusive control of the '309 patent and was essentially one and the same with Greensteel. Therefore, PolyVision is a proper party in this case.

■■■ The Court reaches a different conclusion with respect to Steelcase. Plaintiffs' claim of standing for Steelcase, as PolyVision's parent corporation, is based entirely upon the decision in *Pipe Liners, Inc. v. American Pipe & Plastics, Inc.*, 893 F.Supp. 704 (S.D.Tex.1995). In

*Pipe Liners,* the court held that a parent corporation had standing to seek equitable remedies relating to a patent owned by its subsidiary. *Id.* at 706. Although the court noted that the presence or absence of the parent corporation would not change the case, primarily because the subsidiary held legal title to the patent and there was no claim that the parent held any legal right in the patent, the court found "no reason why [the parent] cannot be joined in the equitable remedies of declaratory and injunctive relief." *Id.* The court in *Beam Laser Systems, Inc. v. Cox Communications, Inc.,* 117 F.Supp.2d 515 (E.D.Va.2000), found the *Pipe Liners* decision unpersuasive because "[o]wnership of corporate stock does not create equitable title in that corporation's property." *Id.* at 521 (citing *Murray v. Mares (In re Murray),* 147 B.R. 688, 690 & n. 3 (Bankr. E.D.Va.1992)). This Court agrees with the analysis in *Beam Laser Systems* that for purposes of standing, a parent does not have equitable title in a patent solely by virtue of its ownership of the subsidiary. Therefore, the Court will grant Defendants' motion to drop Steelcase as a party.

## II. Motion to Transfer Venue

■ Defendants also move to transfer venue to the District of Delaware pursuant to 28 U.S.C. § 1404(a). Because Defendants do not assert that venue in this district is improper, even in the absence of Steelcase as a party, the Court will assume that venue in the Western District of Michigan is proper. In addition, none of the parties contends that venue would be improper in the District of Delaware, and it appears that the action could have been brought in that district since Delaware is both STC's and Greensteel's place of incorporation. *See CoolSavings.com, Inc. v. IQ.Commerce Corp.,* 53 F.Supp.2d 1000, 1005 (N.D.Ill.1999) ("Venue is also proper in the Northern District of California, since that is IQ's place of incorporation

and principal place of business."); *Byrnes v. Jetnet Corp.,* No. CV 84–0–661, 1986 WL 15148, at *1 (D.Neb. June 2, 1986) ("For purposes of § 1400(b) a corporation resides only in its state of incorporation and venue is proper in any judicial district in its state of incorporation."). ·

■ On a motion to transfer under § 1404(a), the moving party bears the burden of proving why a court should transfer the action. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.1995); *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer. *See Holiday Rambler Corp. v. Am. Motors Corp.,* 254 F.Supp. 137, 139 (W.D.Mich. 1966).

■ In considering a motion to change venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness...." *Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991). The private interests of the parties include:

(1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Campbell v. Hilton Hotels Corp.*, 611 F.Supp. 155, 157 (E.D.Mich.1985) (quoting *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967)). Public interest factors include: (i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law. *See Jumara*, 55 F.3d at 879–80.

### A. Private Interest Factors

#### 1. Plaintiffs' Choice of Forum

 One of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum. In general, a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors. *See Warrick v. Gen. Elec. Co.* (*In re Warrick*), 70 F.3d 736, 741 (2d Cir.1995) (per curiam) (quoting *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 444 (2d Cir.1966)). This is especially true where the plaintiff also resides in the chosen forum. *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D.Ill. 1993). On the other hand, the plaintiff's choice of forum is entitled to significantly less weight where the forum has no connection with the matter in controversy. *Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md.2002). Generally, in patent suits, the forum which is the center of the accused activity is the preferred forum. *Beam*, 117 F.Supp.2d at 519 (citing *GTE Wireless v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D.Va.1999)).

Defendants contend that the only party with any meaningful connection to this district is Steelcase, which was improperly joined as a plaintiff. While Defendants' point is well-taken, especially now that the Court has determined that Steelcase lacks standing as a plaintiff in this case, the Court cannot say that this forum has no connection with the lawsuit, because Plaintiffs had at least an arguable basis for filing the action in this district (the location of Steelcase's principal place of business). On the other hand, although Greensteel and STC are both Delaware corporations, none of the parties has any offices, facilities, or employees in Delaware, and Defendants do not claim that Delaware is the center of the accused activity. Therefore, in light of the fact that Steelcase is not a proper plaintiff, the Court declines to give Plaintiffs' choice of forum significant weight but will not totally disregard this factor.

#### 2. Convenience of the Parties

Defendants contend that Delaware would be a more convenient forum for the parties because Dover is approximately 180 miles closer to Greensteel's principal place of business in Dixonville, Pennsylvania and 500 miles closer to STC's principal place of business in Rosslyn, Virginia than Grand Rapids. However, Dover is also approximately 595 miles further from STI's headquarters in Calgary, Alberta, Canada, than Grand Rapids. Moreover, as Plaintiffs point out, Defendants' argument fails to consider the convenience to PolyVision, which has its principal place of business in Atlanta, Georgia. According to the Court's research, the difference in the distances from Atlanta to Grand Rapids and Atlanta to Dover is fairly insignificant, being only about 20 miles. Because transfer of the case to Delaware would, at most, simply result in shifting the inconvenience from one party to another, the Court will assign little weight to this factor.

#### 3. Convenience of the Witnesses

 Convenience of witnesses is perhaps the most important factor in the transfer analysis. *See Meek & Assocs., Inc. v. First Union Ins. Group*, No. CIV.

A. 99–2519–CM, 2001 WL 58839, at *4 (D.Kan. Jan.18, 2001); *Gerling Am. Ins. Co. v. FMC Corp.*, No. 97 Civ. 6473(LMM), 1998 WL 410898, at *3 (S.D.N.Y. July 22, 1998). However, while "convenience to the witnesses is often recognized as the most important factor to be considered" in deciding a change of venue motion, "[i]t is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994).

With regard to the party witnesses, Defendants assert that Dover will be more convenient than Grand Rapids because Greensteel's witnesses will likely travel from Dixonville, Pennsylvania, and STC's witnesses will likely travel from Rosslyn, Virginia. According to Plaintiffs, however, a number of their witnesses are either located in this district or frequently travel to this district from Atlanta, Georgia, and they would not be inconvenienced by a trial in this district. Moreover, as Plaintiffs note, most of Defendants' corporate representatives are based out of Calgary and would have to travel further for trial if venue is transferred to Delaware. Given these considerations, the Court concludes that a transfer would not be significantly more convenient for any of the party witnesses. In fact, given that Defendants have not identified any party witnesses in Virginia, it appears that a transfer to Delaware would be inconvenient for Defendants' witnesses but perhaps not inconvenient for Plaintiffs' witnesses. Therefore, the Court declines to give any weight to the convenience of party witnesses.

With regard to non-party witnesses, the parties have identified five potential witnesses with relevant testimony, four of whom were the inventors of the '309 patent. The remaining witness is the attorney who prosecuted the patent. Three of the witnesses reside in Massachusetts and the other two witnesses reside in Texas and New Hampshire. Defendants' representations of the distances these witnesses would have to travel to Dover and to Grand Rapids from their respective residences shows that trial in Delaware would be more convenient for four witnesses and less convenient for one witness. To the extent that these witnesses' testimony can be presented by deposition, inconvenience to the witnesses would not be an issue. However, if live witness testimony is necessary, the inconvenience to non-party witnesses, based solely upon the number of witnesses for whom a transfer would be more convenient, weighs in favor of transfer.

**4. Location of and Access to Sources of Proof**

■■■ The location of physical evidence, such as documents, is a factor to be considered in determining convenience. *Warrick*, 70 F.3d at 741. Defendants contend that most of the sources of proof regarding the '309 patent are located near the District of Delaware. In particular, Defendants argue that most of the documents regarding the '309 patent will be found at Greensteel's place of business in Dixonville, Pennsylvania, and with the inventors and attorneys who prosecuted the application for the '309 patent. Defendants also point out that physical samples of the accused products and other sources of proof will come from STC's Rosslyn, Virginia office, although Defendants concede that such evidence might also come from STI's Calgary offices or its Stittsville, Ontario, Canada manufacturing facility. Plaintiffs respond that any relevant documents they possess pertaining to the '309 patent are not located in Pennsylvania, but instead are located either at PolyVision's headquarters in Atlanta, Georgia or at Steelcase's headquarters in Grand Rapids,

Michigan. Plaintiffs further point out that since STC is a wholly-owned subsidiary of STI and STI manufactures all of the relevant products in Canada, all of the relevant products, as well as the documentation relating to STI's manufacture and sales of those products, will be located in Canada.

Defendants have not shown that there is a disproportionately larger number of documents located closer to Delaware than Grand Rapids, nor do they assert that it would be more difficult for them to produce their documents in this district. Moreover, given Plaintiffs' assertion that their documents are located either in Atlanta or in Grand Rapids, there is no basis for concluding that a transfer to Delaware would be more cost effective or convenient for either party. This is especially true in light of Defendants' admission that at least some, if not much, of their evidence would come from STI's offices in Canada, which is closer to Michigan than Delaware. Without some indication of why it would be overly burdensome for Defendants to produce their documents and physical evidence in this district, transfer based upon location of physical evidence would, at most, simply result in shifting inconvenience from one party to another. Therefore, this factor is not entitled to significant weight. *See Scheidt v. Klein,* 956 F.2d 963, 966 (10th Cir.1992)(stating that the "[d]efendant never attempted to explain, let alone substantiate, why [boxes of] documents could not be sifted through (at his Florida offices) and the probative ones shipped at relatively minor cost to Oklahoma for trial").

### 5. Availability of Process for Unwilling Witnesses

■ Defendants also contend that the District of Delaware is more likely to be able to compel the attendance of unwilling witnesses because STC and Greensteel are both Delaware corporations and it is more likely that none of the fact witnesses would be subject to this Court's subpoena power. However, a federal court's subpoena power is governed by Fed.R.Civ.P. 45 without regard to a party's state of incorporation. Therefore, the fact that STC and Greensteel were incorporated in Delaware is irrelevant to the issue of whether a court has the power to compel the attendance of an unwilling witness. Moreover, Defendants have not identified any unwilling witness for whom a subpoena would be necessary. Therefore, this factor is entitled to no weight.

### 6. Cost of Obtaining Willing Witnesses

Defendants also contend that the cost of procuring willing witnesses at trial would be greater if the case is tried in this district than if the case it tried in Delaware. Defendants have failed to present any evidence of what the potential cost would be for trial in either forum. Moreover, in light of the fact that several of Defendants' witnesses are located in Canada—closer to Michigan—it is perhaps more likely that the cost of procuring witnesses in Michigan for both parties would be less than in Delaware. Thus, this factor carries no weight.

### 7. Practical Problems

Defendants contend that this factor weighs in favor of transfer because trial in this Court is likely to be more expensive than trial in the District of Delaware. Defendants' argument on this consideration simply rehashes previous arguments and fails to show that trial in the District of Delaware would be any less expensive or any more efficient.

### 8. The Interests of Justice

Finally, Defendants argue that transfer of this case to the District of Delaware

would serve the interests of justice because STC and Greensteel are both Delaware corporations; Delaware will be more convenient for nearly all of the non-party and party witnesses; and Steelcase, which is not a proper plaintiff, is the only party with any meaningful nexus to this district. Plaintiffs counter that transfer would not serve the interests of justice because Delaware is merely the state of incorporation for STC and Greensteel; no witness or evidence is located in Delaware; Delaware has no real contact with the controversy; and transfer would not be more convenient for either party and would be less convenient for some witnesses.

The Court concludes that the interests of justice factor does not present any special consideration in this case because it is simply a conglomeration of the other factors cited by Defendants. Moreover, if relevant at all, this factor weighs against transfer to the District of Delaware based upon the Federal Court Management Statistics submitted by Plaintiffs, which show that the District of Delaware has a larger backlog of cases over three years old. Therefore, this factor does not weigh in favor of transfer.

### B. Public Interest Factors

Neither party has cited any public interest factor bearing specifically on the Court's transfer decision. Therefore, only the private interest factors discussed above will be considered.

### C. Weighing the Factors

Considering all of the relevant factors, including the plaintiff's choice of forum, convenience to the parties and witnesses, and location of and ease of access to sources of proof, the Court concludes that the one factor entitled to any significant weight—the convenience to some non-party witnesses—is not sufficient to outweigh the other factors, especially in light of the fact that Delaware lacks any relevant con-

nection to this case. In other words, granting the motion might result in only shifting the burden of inconvenience from Defendants to Plaintiffs. Therefore, the motion will be denied.

### *Conclusion*

For the foregoing reasons, the Court will grant in part and deny in part Defendants' joint consolidated motion to drop misjoined parties, to dismiss, and to transfer. The motion to drop misjoined parties will be granted with respect to Steelcase and denied with respect to PolyVision. The motion to dismiss will be denied as moot. Finally, the motion to transfer will be denied.

An Order consistent with this Opinion will be entered.