Barbara STROUGO, individually and on behalf of all others similarly situated, and Class Member Karpus Management, Inc., Plaintiffs,

v.

BRANTLEY CAPITAL CORPORATION, Robert P. Pinkas, Michael J. Finn, and Tab A. Keplinger, Defendants.

No. 06 Civ. 13315(SCR).

United States District Court, S.D. New York.

June 3, 2007.

Robert I. Harwood, Wechsler Harwood LLP, New York, NY, for Plaintiffs.

## DECISION AND ORDER

ROBINSON, District Judge.

## I. Background

### A. Procedural History

Barbara Strougo ("Strougo") filed suit on

November 17, 2006 [1] under the Securities Exchange Act of 1934 and SEC Rule 10b–5 on behalf of herself and all others who purchased or otherwise acquired shares of Brantley Capital Corporation ("Brantley") between August 14, 2003 and October 24, 2005 (the "Class Period"). The class action Complaint names as defendants Brantley, Robert Pinkas ("Pinkas"), Michael Finn ("Finn"), and Tab Keplinger ("Keplinger"); all three individual defendants were officers and/or directors of Brantley during nearly all of the Class Period.

On January 16, 2007, Strougo, D. Jeffrey Farrone, and Randal Mears (the "Strougo Group") filed a motion, pursuant to the requirements set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), seeking: (1) appointment of the Strougo Group as lead plaintiff for this class action; (2) approval of the Strougo Group's selection of Harwood Feffer LLP ("Harwood Feffer") as lead counsel for the class; and (3) appointment of Harwood Feffer as lead counsel. On January 20, 2007, the Law Office of William C. Rand submitted a motion on behalf of class member Karpus Management, Inc. ("Karpus") seeking appointment of Karpus as lead plaintiff, approval of Karpus's selection of William C. Rand ("Rand") as lead counsel for the class, and appointment of Rand as lead counsel. The respective plaintiff groups appeared for oral argument on their motions on February 26, 2007.

While the aforementioned motions were pending, this Court granted permission to Defendants Pinkas, Finn, and Keplinger (collectively the "moving Defendants") to file a motion, pursuant to 28 U.S.C. § 1404(a), to transfer venue for this action to the United States District Court for the Northern District of Ohio. Both Karpus and the Strougo Group opposed this motion.[2] Defendant Brantley has taken no position with respect to the motion to transfer venue.

For the reasons set forth below, Karpus's motion for appointment as lead plaintiff and for approval of its selection of Rand as the lead counsel is GRANTED, while the similar motions filed on behalf of the Strougo Group are DENIED. In addition, Defendants' motion to transfer venue to the United States District Court for the Northern District of Ohio is GRANTED.

## B. Facts

Both Strougo and Karpus (collectively "Plaintiffs") allege that Defendants violated federal securities laws by making false and misleading misrepresentations about Brantley's valuation and financial statements. Specifically, and among other things, Plaintiffs claim that Brantley, a publicly-traded business development company, overvalued its investment in Flight Options International, Inc. ("Flight Options"), a company headquartered in Cleveland, Ohio. Brantley stated the value of its Flight Options holdings at a peak of $32.5 million on April 1, 2002; on October 24, 2005, Brantley issued a press release indicating its investment in Flight Options appeared to have no value. According to the Complaint, as a result of this overvaluation, Brantley's stock fell from a high of $12.01 during the class period to a per share price of $4.90.

The Strougo Group purchased a total of 3,475 shares during the Class Period for a collective sum of $34,372.25, though the largest of the three investors who comprise the group also sold 2,000 of those shares during the period at a net profit. While these plain-

1. This matter was reassigned to this Court from Judge Laura Taylor Swain on January 4, 2007. Strougo previously filed a shareholder derivative suit in the Southern District of New York based upon a similar set of operative facts, and that matter had been assigned to this Court. Strougo voluntarily dismissed the derivative action on August 10, 2006. *See Strougo v. Pinkas, et al.,* 05 Civ. 10732 (SDNY) (Robinson, J.).

2. Karpus argues, for various reasons, that the motion to transfer venue was premature, largely because the parties stipulated previously that the lead plaintiff, once designated, would have 30 days from the date of designation to file an amended complaint or opt to continue with the current pleading as the operative complaint in this matter. That stipulation, however, does not even impliedly address a potential motion to transfer venue, nor could it possibly be construed so as to limit this Court's authority to decide such a motion. Here, this Court determined that the best course of action was to decide all outstanding motions with this single Decision and Order.

tiffs do not specifically state their total economic loss during the class period, it is clear that their loss could not have been more than $34,372.25, and could be calculated to fall below $10,000. Karpus, a registered investment advisory firm, purchased 209,952 shares of Brantley during the class period that it did not sell, and calculated its loss as $1,085,661 during the class period.

From August 1, 1996 until October 5, 2005, Brantley, a Maryland corporation, maintained its principal place of business in either Cleveland or Beachwood, Ohio, both of which are municipalities within the Northern District of Ohio. On October 5, 2005, after Brantley director Phillip Goldstein ("Goldstein") took control of Brantley and assumed the title of Chief Executive Officer and Chairman of the Board, Brantley relocated its headquarters to Purchase, New York, a municipality within the Southern District of New York. All three individual defendants were residents of Ohio during the Class Period and remain so to this day.

## II. Analysis

### A. Appointment of lead plaintiff

The PSLRA provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u–4(a)(3)(B)(i). A party is entitled to the statutory presumption of being the most adequate plaintiff if it can show that it: (aa) filed an initial complaint or timely moved for appointment as lead plaintiff; (bb) has the largest financial interest in the relief sought by the class; and (cc) satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff: (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

There is no dispute that both potential lead plaintiffs here complied with the necessary procedural requirements of the PSLRA concerning adequate notice and timely motions for appointment as lead plaintiff. Consequently, this Court will focus on the other aspects of the statutory framework in making the lead plaintiff determination.

### i. Largest financial interest

Courts have developed a four-factor test to determine which party has the largest financial interest in the litigation, focusing on: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (i.e. the number of shares retained during the period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *See Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y.2004). A number of courts have found that the loss suffered during the class period is the most important factor in determining who should be the lead plaintiff. *See, e.g., Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 4617(RJH), 2006 WL 197036, *1, 2006 U.S. Dist. LEXIS 3028, *3 (S.D.N.Y. Jan. 25, 2006).

■ By any of the financial metrics outlined above, Karpus is, without question, the party with the largest financial interest in this litigation. As an institution, Karpus's total share purchases and net share purchases during the Class Period were many times greater than those of the Strougo Group, and Karpus as a whole suffered a far greater financial loss on those shares. Counsel for the Strougo Group has argued that Karpus's interest should not be viewed in the aggregate, as the shares under its control were actually held for an undisclosed number of smaller individual investors, none of whom specifically chose to participate in this suit. This Court finds that position wholly unpersuasive; if anything, Karpus's role as an institutional investor with fiduciary responsibilities makes it particularly well suited to represent the interests of its client investors. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y.2004) (rejecting argument

that institutional investor that held shares beneficially for its clients could not serve as lead plaintiff, and emphasizing "preference expressed by Congress for having institutional investors as lead plaintiffs"). Accordingly, this Court finds that Karpus is the class member with the largest financial interest in the outcome of this litigation.

### ii. Rule 23 typicality and adequacy requirements

▆▆▆▆ Although Rule 23 provides that a party must satisfy four requirements to serve as a class representative, only two—typicality and adequacy—must be addressed in the context of deciding a motion to appoint a lead plaintiff. *See, e.g., Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496(SWK), 2006 WL 3711566, *3, 2006 U.S. Dist. LEXIS 90696, *7 (S.D.N.Y. Dec. 14, 2006). Typicality exists "where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y.2002); *see* Fed.R.Civ.P. 23(a)(3). To meet the Rule 23 requirement that the representative party "fairly and adequately protect the interests of the class," a court must examine: "(1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." *Sczesny Trust*, 223 F.R.D. at 324; *see* Fed. R Cir. P. 23(a)(4).

▆▆▆▆ Karpus purchased or acquired Brantley securities during the Class Period, and its claims arise from allegedly misleading statements made by Brantley; these claims share the same legal basis as those asserted by the Strougo Group. Thus, Karpus satisfies the typicality requirement of Rule 23(a)(2).

▆▆▆▆ In addition, Karpus meets the adequacy requirements of Rule 23(a)(4). The proposed class counsel, Rand, is qualified and capable of carrying out this litigation on be-

half of the class—he opened his own firm in 2001 after working for approximately nine years as an associate at three different law firms, has served as lead counsel in two securities class actions, and has experience with the law governing class action settlements. Further, Karpus has displayed a willingness to pursue its claims vigorously, and certainly possesses sufficient interest to do so.

Though the Strougo Group argues that Karpus's interests are potentially antagonistic to those of other class members, this Court is not persuaded that the business relationships cited as the basis for this belief would in any way impair Karpus from adequately representing the class. According to the Strougo Group, Karpus has a relationship Goldstein, Brantley's current Chairman—specifically, Karpus and investment funds controlled by Goldstein have acted in concert in proxy solicitations concerning other companies. The Strougo Group asks this Court to infer, based solely on these prior dealings, that Karpus was somehow recruited by Goldstein to ensure that this case is not pursued thoroughly. Karpus acknowledges the prior contacts with Goldstein, but maintains that this relationship has no impact on its ability to represent the interests of the class here. Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration, and the Strougo Group offers nothing more than that here. There is no evidence currently before this Court to suggest that Goldstein had any connection whatsoever to the alleged misrepresentations at the crux of this lawsuit. Goldstein is not named as a defendant, and Brantley, under Goldstein's direction, filed suit in Ohio state court in February against the former management of Brantley (including all three of the individual defendants here) alleging at least some claims similar to the claims in this class action.[3] There is no reason to believe that Karpus is interested in this litigation solely as a means to protect Goldstein—indeed, there is no reason to believe that Goldstein is in need of any such protection. The

---

**3.** Defendants in that case removed the matter to federal court, and the action is now pending in the United States District Court for the Northern

District of Ohio. *See Brantley Capital Corp. v. Robert P. Pinkas, et al.*, 07–CV–00645–JG (N.D.Ohio) (Gwin, J.).

existence of the past business relationship between Karpus and Goldstein outlined here is hardly enough to disqualify Karpus from participation. In sum, this Court concludes that Karpus does not have interests antagonistic to those of other class members, and therefore that Karpus meets the adequacy requirements of Rule 23. Consequently, Karpus has established all of the criteria necessary for the statutory presumption that it is the most adequate plaintiff to represent the class in this matter.

Based upon this analysis, it is clear that the Strougo Group has not set forth information sufficient to show that Karpus will not fairly and adequately protect the interests of the class, nor has it shown that Karpus is subject to any unique defenses. Accordingly, the Strougo Group has failed to rebut the statutory presumption in favor of Karpus acting as lead plaintiff; the motion to appoint Karpus as lead plaintiff is therefore GRANTED, and the motion to appoint the Strougo Group as lead plaintiff is DENIED.

### B. Approval and appointment of lead counsel

■ The lead plaintiff is empowered under the PSLRA to select and retain counsel to represent the class members, subject to the approval of the court. *See* 15 U.S.C. § 78u–4(a)(3)(B)(v). This Court finds that Rand, Karpus's selection to serve as lead counsel, possesses the requisite experience to represent the interests of the class members. Accordingly, this Court approves the selection of Rand as lead counsel and hereby appoints Rand to serve as lead class counsel in this action.

### C. Venue transfer

■ This Court has broad discretion to determine whether a transfer of venue is warranted pursuant to 28 U.S.C. § 1404(a). *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir.2006). According to that statute, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As a threshold matter, none of the parties argue that this lawsuit could not have been brought in the Northern District of Ohio; thus, this Court has the statutory discretion to transfer the case to that district if it believes such transfer is warranted, as the Northern District of Ohio is a proper venue for this action.

■ The party moving for a change of venue bears the burden of establishing that transfer is appropriate. *See Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 56 (S.D.N.Y.2001). Courts in this Circuit consider nine factors when determining whether to transfer venue, including: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *See, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. LaFarge N. Am., Inc.*, 474 F.Supp.2d 474 (S.D.N.Y.2007). No single factor is determinative—the factors must be weighed at the Court's discretion. *See, e.g., Citigroup, Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000).

#### i. Convenience of witnesses

■ Convenience of party and non-party witnesses is an important factor in the venue transfer analysis; indeed, certain courts in this district have called it "probably the single-most important factor in the analysis of whether transfer should be granted." *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 657 (S.D.N.Y.1998). Here, it appears that more of the potential witnesses in this action are located in Ohio than are located in New York.

All three moving Defendants are Ohio residents, and current and former employees of other companies central to this action—including Flight Options and Brantley Capital Management LLC, Brantley's Cleveland-based investment adviser—are based in Ohio

as well.[4] Meanwhile, Strougo is a New York resident and Karpus is headquartered in Pittsford, New York, which makes the Southern District of New York far more convenient for both Plaintiffs. While Goldstein resides in New York, Plaintiffs do not point to any relevant non-party witnesses in the New York area. Indeed, the only potential New York-area witnesses mentioned by Plaintiffs are either parties or individuals under the direct control of parties, whereas the moving Defendants point to a wide variety of potentially significant non-party witnesses in Ohio, even though they do not identify these individuals with specificity. On balance, this factor tends to support the transfer of this case to the Northern District of Ohio.

### ii. Location of relevant documents, ease of access to sources of proof

Given that Brantley is now headquartered within the Southern District of New York, it is likely that relevant documents of the corporation that will constitute a substantial portion of the discovery material in this matter will in fact be found here. It is also undisputed, however, that Brantley will be required to produce many of those same documents in Ohio as part of its own lawsuit that is now pending in federal court there. Indeed, Brantley has taken no position with respect to whether the hypothetical burden of transporting documents to Ohio would be significant, and Plaintiffs do not suggest that they themselves would face any hardship with respect to any relevant documents they might have in their possession. Consequently, while this factor nominally favors venue in New York, Brantley's Ohio lawsuit, combined with its silence as to any potential inconvenience it might face leads this Court to view this factor as neutral.

### iii. Convenience of the parties

As noted above, all three individual defendants are Ohio residents, while Strougo is a New York resident and Karpus is based in New York State. Brantley was headquar-

tered in Ohio for all but three weeks of the Class Period, but is currently located within the Southern District of New York. By choosing to file suit in state court in Ohio based on similar facts in February, however, Brantley signaled to this Court that it does not necessarily view Ohio as an inconvenient forum. This Court also takes note of the fact that Brantley's state court action has been removed to federal court, and as a result, Brantley is itself now a plaintiff in the Northern District of Ohio. It is clear that New York would be a more convenient forum for Plaintiffs and Ohio generally would be more convenient for defendants, particularly because this Court is not convinced that the Northern District of Ohio is inconvenient for Brantley. This factor does not tilt the balance in favor of either venue.

### iv. Locus of the operative facts

 Various courts in this district have held that the location of operative events is a primary factor in determining a motion to transfer venue, *see, e.g., ZPC 2000, Inc. v. SCA Group, Inc.,* 86 F.Supp.2d 274, 279 (S.D.N.Y.2000). One of the principal allegations in the complaint filed by the Strougo Group is that Brantley overvalued its investment in Flight Options. That valuation decision and the statements at issue here were made while Brantley was based on Ohio and were made by, or with the knowledge of, officers of Brantley who resided in Ohio both then and now. Further, Flight Options itself was based in Cleveland, which means that every component of this central aspect of the factual scenario in the case involved parties and non-parties operating primarily in Ohio. It is also important to note that for all but three weeks the Class Period defined by Plaintiffs here, Brantley was based in Ohio, meaning that any allegations concerning decisions or statements made by Brantley or the individual defendants during that period will almost certainly be connected to events that took place in Ohio. Without question, the locus of operative facts here weighs heavily

---

4. Neither Plaintiffs nor moving Defendants provide specific information about individual non-party witnesses who would provide relevant testimony; defendants have at least proffered several

categories of witnesses from various entities who might have important information to provide, and it is noteworthy that all are closely affiliated with Ohio.

in favor of transferring this case to the Northern District of Ohio.

### v. Availability of process to compel attendance of unwilling witnesses

■ Both parties acknowledge that Federal Rule of Civil Procedure 45 governs the scope of the subpoena power of federal courts to compel the appearance of unwilling witnesses who would be required to travel more than 100 miles from their homes. As described above, however, the moving Defendants have suggested several important categories of non-party witnesses residing in Ohio whose testimony might have to be compelled by subpoena. Such witnesses are far more likely to fall within the subpoena power of the Northern District of Ohio than of the Southern District of New York. Plaintiffs again point to Goldstein as a potential unwilling witness who could not be called in Ohio, but as an officer of Brantley, Goldstein clearly is not protected by the limitations of Fed. R.Civ.P. 45(c)(3)(A)(ii).[5] Accordingly, for these reasons and the reasons described as part of the first factor above, this factor militates in favor of transferring the case to the Northern District of Ohio.

### vi. Relative means of the parties

None of the parties argue that either venue would make it impossible for any party to continue this action, making this factor neutral in determining the appropriate venue.

### vii. A forum's familiarity with the governing law

This lawsuit arises under federal securities law; the Southern District of New York and the Northern District of Ohio are equally capable of applying the relevant federal laws in this action. Thus, this factor is neutral in the venue analysis.

### viii. Weight accorded a plaintiff's choice of forum

In general, the Second Circuit has held that "courts should give deference to a plaintiff's choice of forum," *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 70 (2d Cir. 2001), but the importance of a plaintiff's choice of forum is diminished when "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F.Supp.2d 370, 376 (S.D.N.Y.2006).

As discussed above, the locus of operative facts of this action is, without question, the Northern District of Ohio—while venue is certainly appropriate in this District, it is clear that the facts of this case have little material connection to New York. Thus, while this factor obviously favors venue in the Southern District of New York, it alone is not enough to overcome the myriad reasons described here in support of transfer to Ohio.

### ix. Trial efficiency/interests of justice/totality of the circumstances

■ Finally, as the moving Defendants repeatedly emphasize in their papers and as has been described above, there is an action pending in the Northern District of Ohio involving many of these same parties and concerning facts related to the key operative facts of this suit. From a standpoint of judicial economy and efficiency, it makes sense for these actions to proceed before the same court. *See Fuji Photo Film Co.*, 415 F.Supp.2d at 376 ("it is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer"). While economy and efficiency alone might not be a sufficient basis to transfer this matter to the Northern District of Ohio, there are, as described herein, many reasons why transferring venue to the Northern District of Ohio is warranted.

In view of these factors and the arguments made by the parties, this case is hereby transferred to the Northern District of Ohio for all further proceedings for the convenience of parties and witnesses and in the

---

**5.** Plaintiffs vaguely assert that other Brantley employees may be potential witnesses in this matter, but they do not describe who those witnesses might be or what information they might provide. Further, because they would be under the control of a party, their attendance would be easier to compel without a subpoena.

interest of justice. Defendants' motion to transfer venue is GRANTED.

### III. Conclusion

For the reasons discussed above, it is hereby ordered that:

1. Plaintiff Brantley Shareholder Group's motion (docket number 6) for appointment of the Strougo Group as lead plaintiff, for approval of the Strougo Group's selection of Harwood Feffer LLP as lead counsel, and for appointment of Harwood Feffer as lead counsel is DENIED.

2. Plaintiff Karpus Management, Inc.'s motion (docket number 13) for appointment of Karpus as lead plaintiff, for approval of Karpus's selection of William C. Rand as lead counsel, and for appointment of Rand as lead counsel is GRANTED.

3. Defendants' motion (docket number 33) to transfer venue to the United States District Court for the Northern District of Ohio is GRANTED.

4. This case is TRANSFERRED to the United States District Court for the Northern District of Ohio for all further proceedings.

The Clerk of the Court of the Southern District of New York is directed to close this case.

IT IS SO ORDERED.