WAYNE COUNTY EMPLOYEES' RE-
TIREMENT SYSTEM, on behalf of it-
self and all others similarly situated,
Plaintiff,

v.

MGIC INVESTMENT CORPORATION,
Curtis S. Culver, and J. Michael
Lauer, Defendants.

Case No. 08–12080.

United States District Court,
E.D. Michigan,
Southern Division.

March 10, 2009.

David M. Foster, Farmington Hills, MI, Harold S. Fried, Fried, Saperstein, Southfield, MI, Elwood S. Simon, John P. Zuccarini, Elwood S. Simon Assoc., Birmingham, MI, for Plaintiffs.

Scott T. Seabolt, Foley & Lardner, Detroit, MI, for Defendants.

*OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER VENUE*

DAVID M. LAWSON, District Judge.

The plaintiff in this case, Wayne County Employees' Retirement System, brings this putative class action against the defendants, an investment holding company and its officers, for violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5. The plaintiff alleges that for a period of time between February 2007 and February 2008, the defendants made material misstatements and omissions about the operations and financial viability of the corporate defendant and its subsidiaries, causing the plaintiff and others similarly situated to purchase stock at inflated prices resulting in substantial losses. Four other entities filed similar lawsuits against these defendants in the United States District Court for the Eastern District of Wisconsin. One of those plaintiffs, Fulton County (Georgia) Employees' Retirement System, has filed a competing motion with the present plaintiff in this case to appoint counsel, liaison counsel, and lead plaintiffs. Meanwhile, the defendants have moved to dismiss for improper venue or to transfer venue to the Eastern District of Wisconsin where the other lawsuits are pending. The Court heard oral argument on the motions on November 3, 2008 and now concludes that venue is proper in this district, but the case ought to be transferred to the Eastern District of Wisconsin for the convenience of the parties and consolidated with the other lawsuits in the interest of judicial economy. Therefore, the Court will deny the motion to dismiss, grant the motion to transfer venue, and dismiss the motions to appoint

lead plaintiff and liaison counsel, which may by renewed in the new venue.

## I.

MGIC Investment Corporation (MGIC–IC) is a publicly-traded holding company incorporated and headquartered in Wisconsin. Its largest asset is Mortgage Guaranty Insurance Corporation (MGIC), one of the nation's largest providers of private mortgage insurance that does business in all fifty states. MGIC–IC's chief executive officer and chairman of the board of directors is defendant Curt S. Culver, and its chief financial officer and executive vice-president is defendant J. Michael Lauer. They both reside in Wisconsin. A principal base of MGIC's operations is Troy, Michigan.

Plaintiff Wayne County Employees' Retirement System alleges that during the one-year period from February 6, 2007 through February 12, 2008, it acquired a total of 114,230 shares of the defendant company, incurring estimated losses of $1,664,569, calculated on a mean trading price according to the method set forth in 15 U.S.C. § 78u–4(e)(1). The plaintiff attributes these losses to a series of material omissions and misrepresentations made by MGIC–IC's officers in various press releases, earning announcements, SEC periodic filings, and earning calls that occurred during the class period and led to the company's stock trading at artificially inflated prices.

The allegedly concealed or misstated information includes the status of investments and joint ventures in entities that were set up to invest in risky subprime mortgages, which suffered substantial losses and resulted in the undercapitalization of MGIC–IC. The plaintiff accuses the company of failing to write down these investments in a timely fashion and in accordance with the Generally Accepted Accounting Principles, and, the plaintiff says, given the increased volatility of the subprime market, the defendants were unjustified in making the projections about the company's short-term outlook, especially the 2007–08 earnings projections. Defendants Culver and Lauer are sued in their individual capacities as the company's "controlling persons" who are jointly and severally liable for MGIC–IC's securities law violations under section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a).

As a result of the misleading public information, the plaintiff contends, MGIC–IC's stock traded at artificially inflated prices, reaching the high of $70.09 per share in February 2007. Then, on July 30, 2007, MGIC–IC issued a press release announcing that the value of one of its major investments was materially impaired. The price of MGIC–IC's common stock declined from $45.44 per share to $38.66 overnight. On October 17, 2007, the stock decreased to $26.16 per share when MGIC–IC announced that it had suffered its first quarterly loss as a public company due to a large increase in amount and severity of defaults. Finally, the price of the stock dropped eighty-two percent compared to the class period high when on February 13, 2008, MGIC–IC issued a press release that finally revealed the company's results for the fourth quarter of 2007 and reported a net quarter loss of $1.47 billion, including an after-tax charge of $33 million related to equity losses incurred by one of its investments. That day, MGIC–IC stock closed at $12.61 per share, the lowest price at which MGIC–IC's stock had traded in over thirteen years.

Other investors besides the present plaintiff suffered large losses in connection with the acquisition of the company's securities. As a consequence, since the commencement of this action on May 12, 2008,

the defendants have been named in four other class actions filed in the Eastern District of Wisconsin. *See Plumbers' & Pipefitters' Local # 562 Pension Fund v. MGIC Inv. Corp.,* No. 08–C–0458 (E.D. Wis., filed May 22, 2008) (naming as defendant Patrick Sinks, the president and chief operating officer of MGIC, in addition to MGIC Investment, Culver and Lauer); *Teamsters Local 456 Annuity Fund v. MGIC Inv. Corp.,* 08–CV–0500 (E.D. Wis., filed June 9, 2008); *Minneapolis Firefighters' Relief Assoc. v. MGIC Inv. Corp.,* No. 08–CV–00614–LA (E.D. Wis., filed July 15, 2008); *Fulton County Employees' Retirement Sys. v. MGIC Inv. Corp.* (E.D. Wis., filed Oct. 28, 2008) (naming as defendants MGIC Investment Corporation, Curt S. Culver, Patrick Sinks, Larry Pierzchalski, Bruce Williams and J. Michael Lauer). All four actions allege similar federal securities claims and were deemed "related" by Judge Lynn S. Adelman of the Eastern District of Wisconsin. The plaintiffs in *Teamsters Local* and *Minneapolis Firefighters' Relief Association* allege the same class period as the one proposed by Wayne County—February 6, 2007 through February 12, 2008. Fulton County seeks a broader class period—October 12, 2006 through February 12, 2008—as does the plaintiff in *Plumbers' & Pipefitters' Local.*

MGIC–IC's principal operating subsidiary, MGIC, the plaintiff contends, provides ninety percent of MGIC–IC's revenue. The plaintiff claims that MGIC and MGIC–IC share several high-level executives and officers—such as Culver and Lauer (CEO and CFO of both entities, respectively), Patrick Sinks, president and COO, Jeffrey H. Lane, general counsel and secretary, James Karpowicz, chief investment officer, Joseph J. Komanecki, controller and chief accounting officer, and Joseph J. Ziino, Jr., regulatory relations officer, associate general counsel, and assistant secretary. It appears that MGIC and MGIC–IC's main offices are in the same building in Wisconsin, and they share the same 800 telephone and facsimile numbers. MGIC maintains its largest regional processing center in Troy, Michigan.

The defendants contend that venue is improperly laid in this district, and even if it is not, the case should be transferred to the Western District of Wisconsin, where the other related cases are pending against them. The plaintiff insists that venue is proper here, and its choice of forum should be respected.

## II.

Venue in the federal district courts ordinarily is governed by 28 U.S.C. §§ 1391–1413. Under the general venue provision, section 1391, an action may be brought in any district "where any defendant resides" if all defendants reside in the same state, where "a substantial part of the events or omissions giving rise to the claim occurred," or, if no other district is proper, "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a).

The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* contains a special provision for venue for securities violations arising under the Act. "Section 27 grants jurisdiction to the federal courts and provides for venue and service of process." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 577, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Section 27 of the Act states:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other

district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. Section 27 has been interpreted to allow venue in any district where (a) the defendant transacts business; (b) the defendant is found or is an inhabitant; or (c) any act or transaction constituting a violation has occurred. *See Securities Investor Prot. Corp. v. Vigman,* 764 F.2d 1309, 1316 (9th Cir.1985). A few courts have held that this special venue provision displaces the general venue provision contained in 28 U.S.C. § 1391, *see, e.g., SST Global Tech., LLC v. Chapman,* 270 F.Supp.2d 444 (S.D.N.Y.2003), although no court in the Sixth Circuit has ever made such a statement. *See, e.g., United Liberty Life Ins. Co. v. Pinnacle West Capital Corp.,* 149 F.R.D. 558, 561–62 (S.D.Ohio 1993) (discussing venue under both Section 27 and 28 U.S.C. § 1391). The rule for establishing venue under Section 27 is more permissive than under 28 U.S.C. § 1391, consistent with the intent of the venue and jurisdiction provision in the securities laws "to grant potential plaintiffs liberal choice in their selection of a forum." *Ritter v. Zuspan,* 451 F.Supp. 926, 929 (E.D.Mich.1978); *see also Leroy v. Great Western United Corp.,* 443 U.S. 173, 188, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) (noting "the underlying policy of § 27 to confer venue in a wide variety of districts in order to ease the task of enforcement of federal securities law").

It is undisputed that the individual defendants are not found and do not reside in this district. The plaintiff argues, however, that MGIC–IC transacts business here because its wholly-owned subsidiary, MGIC, is located in the district. The defendant resists that argument, contending that MGIC's activities in Michigan are not attributable to MGIC–IC for venue purposes. Both sides cite cases that assess the level of control a parent exercises over its subsidiary to determine if the subsid-

iary's activities can bind the parent. For instance, the plaintiff cites *Phone Directories Co., Inc. v. Contel Corp.,* 786 F.Supp. 930 (D.Utah 1992), for the proposition that a parent corporation can transact business "through" its subsidiary that conducts business in the district.

■ *Phone Directories* is a case decided under the Clayton Act. Although it does not provide guidance in the present matter, the Clayton Act cases are useful because that legislation contains a special venue provision that parallels the one found in the Securities Exchange Act: it allows venue in any district where the defendant "transacts business." 15 U.S.C. § 22. In *United States v. Scophony Corp. of America,* the Supreme Court held that the special venue statute should be given a broad meaning, stating that "a corporation is engaged in transacting business in a district ... if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." 333 U.S. 795, 807, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) (citation omitted). In construing that language, other courts have been mindful of the need to respect the separate corporate identities of parents and subsidiaries. Consequently, a parent's passive investment in a subsidiary will not confer venue under the concept of "transacting business." *See Tiger Trash v. Browning–Ferris Indus., Inc.,* 560 F.2d 818, 823 (7th Cir.1977). However, the distinction must be made between the idea of a parent transacting business *through* a subsidiary—which implies some sort of agency or *alter ego* relationship—and transacting business *with* the subsidiary—which means that the parent has some business dealings with the subsidiary within the district. *See Campos v. Ticketmaster Corp.,* 140 F.3d 1166, 1173 (8th Cir.1998) (holding that a parent must exercise some control over the subsidiary's activities,

which "does not require that the subsidiary be controlled to an ultimate degree by its parent, ... although something more than mere passive investment by the parent is required.... The parent must have and exercise control and direction ... over the affairs of its subsidiary in order for venue to be proper") (citations omitted).

The Court finds that this requirement is easily satisfied here. MGIC–IC is simply a holding company, whose principal asset is MGIC. A major share of MGIC's business comes from Michigan, and seven members of high-level management at MGIC overlap with MGIC–IC's management. The companies have offices in the same building in Milwaukee, and share electronic databases, telephone lines, and facsimile numbers. MGIC–IC not only owns all the stock of MGIC, but it controls and directs the operation of the subsidiary corporation through common management. MGIC indisputably is present in this State, with its largest regional processing center located in Troy, Michigan. MGIC's record amounts of foreclosures in the State appreciably impairs the viability of MGIC–IC itself. Ninety percent of MGIC–IC's revenues come from MGIC. The critical fact is not the extent of MGIC's activities in the district, but MGIC's presence here and MGIC–IC's activity in transacting business with it in this district that establishes venue. *See Campos*, 140 F.3d at 1173 ("It is enough if the parent exercises continuing supervision of and intervention in the subsidiaries' affairs....") MGIC–IC's dealings with MGIC in this district amount to transactions "of any substantial character." For the purposes of a broad venue provision of the Securities Exchange Act, therefore, venue in the district is properly laid because by exerting influence over MGIC, MGIC–IC "transacts business" in the state with its subsidiary.

The question remains, however, whether the case ought to proceed in this district, in light of the fact that the allegedly illegal acts and actors occurred and are located in Wisconsin, and there are other putative class actions challenging the same conduct pending in the Eastern District of Wisconsin. Title 28, section 1404(a) of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Courts have broad discretion to transfer an action pursuant to section 1404 to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience. *See generally Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The Supreme Court instructs that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen*, 376 U.S. at 622, 84 S.Ct. 805). Courts consider the following factors when ruling on a motion to transfer under section 1404(a):

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D.Mich.2000); *see also Grand*

*Kensington, LLC v. Burger King Corp.*, 81 F.Supp.2d 834, 836 (E.D.Mich.2000); *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F.Supp. 93, 96 (E.D.Mich.1991); *accord Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (holding that a "court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'") (quoting *Stewart Organization, Inc.*, 487 U.S. at 30, 108 S.Ct. 2239). Additionally, the Court may consider the forum's familiarity with the governing law. *See Grand Kensington*, 81 F.Supp.2d at 836 (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Generally, a plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing. *See Grand Kensington*, 81 F.Supp.2d at 836 (citing *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 668 (E.D.Mich.1996)). A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another. *See Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F.Supp. 371, 377 (W.D.Mich.1990).

■ An assessment of the factors as they apply in this case points ineluctably to the conclusion that transfer is the most sensible option for adjudication of this putative class action.

### Convenience of Witnesses

The convenience of witnesses favors Wisconsin because, as the defendants point out, all key witnesses are employed at MGIC–IC's Wisconsin office. These witnesses include the defendants Culver and Lauer, general counsel of MGIC–IC Jeffrey Lane, the company's President and COO Patrick Sinks, Bernard Verhoeven, who was a member of the management team at a failed subsidiary during the period in question, Michael Zimmerman, the head of investor relations who will testify about MGIC's press releases, Katie Monfre, the company's corporate relations director, Joseph Komanecki, MGIC's controller and chief accounting officer, and Timothy Matte and Julie Sperber, assistant controllers on Mr. Komanecki's team. Other witnesses include the accountants from MGIC–IC's audit firm Price Waterhouse Coopers's Wisconsin office. MGIC–IC represents that all of these people reside in Eastern District of Wisconsin, even those associated with MGIC. On the other hand, although the plaintiff's representatives will be inconvenienced by traveling to Wisconsin, they will be compelled to travel there anyway to prosecute this lawsuit and take discovery. Furthermore, Wayne County is seeking an appointment as a lead plaintiff in Wisconsin. And the plaintiff's witnesses, which include investor conduits Bear Sterns Companies, Inc. (a New York company), Ameriquest Mortgage Company (a California entity), ABN AMRO Bank (a Netherlands bank), GMAC/RFC (a company from Minnesota), and NovaStar Financial (Kansas City, Missouri), would be no less inconvenienced by litigating in Wisconsin as in Michigan. The convenience of the parties—oftentimes called "probably the most important factor in the analysis of whether transfer should be granted"—supports the transfer of venue to Eastern District of Wisconsin. *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 106–07 (S.D.N.Y.2007) (quoting *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 657 (S.D.N.Y.1998)); *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F.Supp.2d 714, 720–21 (W.D.Mich.2004).

### Location of Relevant Documents and Relative Ease of Access to Sources of Proof

The plaintiff points out that the defendant company maintains "paperless" envi-

ronment, and therefore this factor carries little weight. Perhaps that is true even in the absence of a paperless environment; indeed, some courts observe that "modern photocopying technology and electronic storage deprive this issue of practical or legal weight," *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F.Supp.2d 376, 390 (D.Conn.2008) (citation omitted), and "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge North Am., Inc.*, 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007). This factor does not strongly favor either district.

*Convenience of the Parties and Weight Accorded to a Plaintiff's Choice of Forum*

As noted earlier, the plaintiff's choice of venue is normally entitled to substantial weight in determining the propriety of a transfer. In the context of the Securities Exchange Act, it is especially so given "the intent of the venue and jurisdiction provisions of the securities laws ... to grant potential plaintiffs liberal choice in their selection of a forum." *Ritter v. Zuspan*, 451 F.Supp. at 928. Nonetheless, the choice of forum is still subject to the balancing of section 1404. The fact that this is a class action weakens the plaintiff's claim for deference to its choice of venue further because the class members are not limited to residents of Michigan, and it is not yet clear who the lead plaintiff in the action would be—a resident of Michigan or a resident of another state. *See Blumenthal v. Mgmt. Assistance, Inc.*, 480 F.Supp. 470, 472 (N.D.Ill.1979); *Firmani v. Clarke*, 325 F.Supp. 689, 691 (D.Del. 1971). The plaintiff cites *Carty v. Health-Chem Corp.*, 567 F.Supp. 1, 3 (E.D.Pa. 1982), in support of its claim that where the class is not yet certified, the plaintiff's choice of venue is accorded the usual deference. However, in *Carty* it was not clear before the certification whether the class actually would be nationwide. In the present case, if any class is certified, it unquestionably would include non-Michigan plaintiffs. *Carty*, therefore, does not provide much guidance on the venue question.

The Wayne County plaintiff likely will be inconvenienced by the transfer. There is authority that suggests consideration should also be given to the potential disruption of the defendant's business caused by the absence of its employees from the jurisdiction during the litigation. *In re Nematron Corp. Secs. Litig.*, 30 F.Supp.2d 397, 401 (S.D.N.Y.1998) (justifying the transfer of venue, among other factors, by the disruption that the trial in the current venue would cause in the operation of a small high-tech company). In this case, the defendants' inconvenience counterbalances but does not outweigh the plaintiff's choice of forum, so this factor slightly favors the plaintiff.

*Locus of the Operative Facts*

The allegations in this case revolve around various press releases and announcements made in Wisconsin, by employees of MGIC–IC who all reside in Wisconsin. The plaintiff has not discussed this factor in its brief opposing the transfer, despite the recognition it is an important factor in resolving a motion to transfer venue. *See ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F.Supp.2d 274, 279 (S.D.N.Y.2000). Although venue is proper in this district, the operative facts of the case have little material connection to the state. Therefore, this factor strongly favors transfer.

*Availability of Process to Compel Attendance of Unwilling Witnesses*

This factor also favors transfer. The defendants list several out-of-state witnesses that they plan to call at trial—such as Thomas Brown, Price Waterhouse Coopers's engagement partner who works in

Chicago, and Bill Burgess, Goldman Sachs investment banker, also from Chicago—who will be within a hundred-mile radius of the Wisconsin court, but would be beyond the subpoena powers of this district. The plaintiff counters that MGIC–IC failed to explain why these witnesses would be "unwilling" or why they would be necessary, and both MGIC–IC and Wayne County identified some witnesses that are beyond subpoena power of either court. These are valid points, but they do not negate the fact that the defendants have identified potentially hostile witnesses within the subpoena power of the Wisconsin court.

*Relative Means of the Parties/Forum's Familiarity with Governing Law*

Neither of the parties argued that the other side has greater means to litigate out-of-town. This factor is neutral. Likewise, both forums would be equally capable of applying the Securities Exchange Act in deciding the dispute.

*Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances*

This point strongly favors transfer, and perhaps is decisive. There can be no dispute that "to allow two separate district courts ... to address almost identical causes of action involving identical issues in class actions whose members overlap[ ] would be an inefficient use of judicial resources." *City of Columbus v. Hotels.com, L.P.*, 2:06–cv–677, 2007 WL 2029036, at *7 (S.D.Ohio 2007) (citation omitted) (holding that transfer would be appropriate when two identical cases were pending in the separate districts of the same state). There are five separate lawsuits now pending against these defendants. Three of them propose the same class period; two suggest a broader period. Although the present case was filed first, all of the other four were filed in the Eastern District of Wisconsin. It appears that Judge Adelman has consolidated them, and there is simply no good reason to treat the present case as an outlier. There can be no question that the discovery will overlap, if it is not duplicative. If classes are certified, they likely will include the same members. The subject matter of the claims and the defendants' alleged misrepresentations are the same. The Court believes that the efficiencies to be realized by transfer and consolidation far outweigh any inconvenience that a transfer will visit upon the present plaintiff, and will overcome the preference usually allocated to the plaintiff's choice of forum.

The Court also must consider "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Langley v. Prudential Mortg. Capital Co., LLC,* 546 F.3d 365, 370 (6th Cir.2008) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. at 29, 108 S.Ct. 2239). The Seventh Circuit has explained:

> The "interest of justice" is a separate component of a § 1404(a) transfer analysis, ... and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.... Factors traditionally considered in an "interest of justice" analysis relate to the efficient administration of the court system. For example, the interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial,.... By the same token, related litigation should be transferred to a forum where consolidation is feasible.

*Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220–21 (7th Cir.1986) (citations omitted).

As noted above, the public factors bearing on efficiency all favor transfer of the case to be joined with the other four related lawsuits. It is quite clear that these cases should be adjudicated together, and the forum that will accommodate them all is where the present action should go. Because venue is proper in Wisconsin, "the most efficient and sensible result is not a non-prejudicial dismissal of one claim, but rather transfer of the entire case" to another district. *Schultz v. Ary,* 175 F.Supp.2d 959, 966 (W.D.Mich.2001) (citation omitted).

## III.

The Court concludes that although venue is properly laid in this district, the present case should be transferred to the Eastern District of Wisconsin. There, the case may be consolidated with the pending parallel litigation. That forum likewise is in the better position to appoint counsel and choose liaison counsel and lead plaintiff.

Accordingly, it is hereby **ORDERED** that the defendants' motion to dismiss is **DENIED** and the motion to transfer this case to the Eastern District of Wisconsin [dkt # 17] is **GRANTED.**

It is further **ORDERED** that the motions by the Wayne County Employees' Retirement System, Fulton County (Georgia) Employees' Retirement System to appoint counsel, liaison counsel and lead plaintiffs [dkt # s 9, 11] are **DISMISSED without prejudice.**

It is further **ORDERED** that the Clerk of the Court shall **TRANSFER** this case to the United States District Court for the Eastern District of Wisconsin.